**SO ORDERED.**

**SIGNED this 29 day of August, 2007.**

_____
**A. Thomas Small
United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION**

| | |
|---|---|
| IN RE: | CASE NO. 05-01965-5-ATS |
| **BOLTON CORPORATION** | |
| DEBTOR | |
| | |
| **BOLTON CORPORATION** | ADVERSARY PROCEEDING NO. S-07-00077-5-AP |
| Plaintiff | |
| v. | |
| **BE&K BUILDING GROUP, INC.**, successor by merger to **SUITT CONSTRUCTION CO., INC.**, | |
| Defendant. | |

**ORDER DENYING MOTION TO DISMISS
AND ALLOWING MOTION TO STAY AND COMPEL ARBITRATION**

    The matters before the court are the motions to dismiss or, in the alternative, to stay this action and compel arbitration filed by the defendant, BE&K Building Group, Inc., successor by merger to Suitt Construction Company, Inc. ("BE&K"). A hearing took place in Raleigh, North Carolina on August 14,

2007. At the conclusion of the hearing the court denied the motion to dismiss and held open the defendant's alternative motion to stay the bankruptcy action and compel arbitration pending the court's receipt of relevant contract documents. For the reasons that follow, the alternative motion to stay and to compel arbitration will be allowed.

Plaintiff Bolton Corporation filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on May 13, 2005. Its amended plan of reorganization was confirmed on January 26, 2006. Bolton's plan provided, in paragraph 7.7, that Bolton would seek to recover monies it claims are owed to it by Suitt Construction Company pursuant to a construction project undertaken at Pope Air Force Base, North Carolina in 2003-2004. Suitt, the general contractor for the project, was merged into BE&K in June 2006; thus BE&K is the named party in the complaint. For ease of reference, the court will refer to BE&K as the contracting party, although the original contract was between Bolton and Suitt.

Bolton's complaint alleges two claims – one for collection of an outstanding receivable in the amount of $351,753.66, and one for a series of contract breaches and resulting delay, which together caused Bolton to incur additional costs of $391,028. These claims are within the jurisdiction of the court because, according to Bolton, this adversary proceeding arises under title 11 and Bolton's pending bankruptcy case; the court retained jurisdiction to resolve matters related to this litigation in the provisions of the confirmed plan; and the action is a core proceeding under 28 U.S.C. § 157(b)(2). In response, BE&K filed its motion to dismiss or, in the alternative, to stay and compel arbitration. It has not yet filed an answer to the complaint, and has not filed a proof of claim or counterclaim.

2

      The contract between BE&K and Bolton provides, with respect to arbitration, as follows:

> SECTION 6. CONTRACTUAL RELATIONSHIP: . . . . *In the event that the Contract Documents between the Owner and the Contractor contain an arbitration agreement*, the Subcontractor agrees that any arbitration proceedings initiated by it or by the Contractor may, at the Contractor's option, be consolidated with any arbitration proceedings between the Owner and the Contractor and/or between the Contractor and any other contractor, subcontractor, or supplier, and agrees to be bound to the Contractor to the same extent that Contractor is bound to Owner or other contractor, subcontractor, or supplier by any decisions or awards made in such proceedings. *Notwithstanding any provision of this Subcontract to the contrary, Contractor may, at its sole discretion, elect to arbitrate any claims or disputes between Contractor and Subcontractor in accordance with the then current Construction Industry Rules of the American Arbitration Association or the arbitration rules specified in the Contract Documents.*

Subcontract § 6 (emphasis added).

      At the hearing, Bolton argued that this language could not be interpreted without reference to the primary contract between the Contractor, BE&K, and the Owner, the Army Corps of Engineers [hereinafter "primary contract"]. In some instances, Bolton pointed out, arbitration clauses exclude application to certain types of legal claims, which conceivably could include the accounts receivable and contract claims at issue in this proceeding. At the court's request, the defendant furnished a copy of the primary contract, which the court has now reviewed. The primary contract is over 140 pages long, including an insert discussing labor standards, and unfortunately includes no index, but as best the court can determine it makes practically no mention of arbitration. It does, on page 83, in ¶ 52.233-1 "Disputes," require the Contractor to submit a certification when submitting a claim "when using – Arbitration conducted pursuant to 5 U.S.C. 575-580," ¶ 52.233-1(d)(2)(i)(B), but it otherwise, and somewhat surprisingly, does not address arbitration. Thus, the court's analysis, as set forth below, is confined to the language of the contract between Bolton and BE&K.

3

At the conclusion of the hearing of August 14, 2007, the court informed the parties that the complaint would not be dismissed. The issue of whether the claims are core or non-core aside, it is apparent that the instant proceeding is sufficiently related to the plaintiff's case under Title 11 to support a finding of "related to" jurisdiction. Valley Historic Ltd. P'ship, 486 F.3d 831, 836 (4th Cir. 2007) (adopting test established in Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3rd Cir. 1984)). The "essential inquiry" in proceedings like the instant one, in a case in which the plan has been confirmed, is whether there is a "'close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter.'" 486 F.3d at 836 (quoting Bergstron Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.), 372 F.3d 154, 166 (3d Cir. 2004)). In practical terms, the Third Circuit reasoned, the analysis leads to the conclusion that "'[m]atters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus.'" 486 F.3d at 836 (quoting Bergstron Binder, 372 F.3d at 167). The Fourth Circuit adopted the "close nexus" requirement, and that requirement is satisfied in this proceeding because any amounts recovered in this litigation will, as designated in Bolton's confirmed plan, be dedicated to payment of unsecured creditors.

The next issue before the court is whether the contract provides for arbitration of this type of claim and, in light of the questions raised by Bolton during the hearing, whether the fact that only BE&K is given the right to elect arbitration renders the contract unfair, its obligations illusory, or otherwise akin to a contract of adhesion. The court concludes that the last sentence of the section clearly gives the Contractor the right to elect to submit disputes between it and its subcontractor to arbitration, either in accordance with the current Construction Industry Rules of the American Arbitration Association or rules specified in the

4

primary contract, which the court determined to not exist. Thus, BE&K is left with the right to elect to arbitrate claims within the current AAA rules.

The fact that BE&K may elect to arbitrate claims, and Bolton cannot, does not render either this provision or the contract illusory, unfair, or otherwise unenforceable. Questions of contract "validity, revocability, or enforceability," including the enforceability of arbitration provisions, are resolved with reference to state law. Perry v. Thomas, 482 U.S. 483, 492 n.9 (1987). The Fourth Circuit recently noted, in a case requiring the construction of an arbitration clause under North Carolina state law, that "North Carolina law provides that so long as the contract as a whole is supported by adequate consideration, there is no requirement that an arbitration provision in the contract place an obligation to arbitrate on all parties to the contract." Senior Mngmt., Inc. v. Capps, 2007 WL 1800235 (4th Cir. 2007) (unpublished opinion). Instead, under North Carolina law, "'mutuality' merely requires consideration on each side of a contract. Mutuality does not require that each of the contract terms must apply equally to both parties to be enforceable." Tillman v. Commercial Credit Loans, Inc., 177 N.C. App. 568, 580, 629 S.E.2d 865, 874-75 (2006); see also Strategic Outsourcing, Inc. v. Stacks, 176 N.C. App. 247, 251, 625 S.E.2d 800, 803 (2006) (rejecting defendant's argument that "provision allowing one party to exempt its claims from arbitration would be unreasonable and unconscionable for want of mutuality"). This court finds, with reference to North Carolina law, that the arbitration provision in the parties' contract is enforceable.

The issue of which state's law would apply to construction of the subcontract has not been briefed, and it may be that a full copy of the subcontract, which has not been provided to the court, would require application of South Carolina state law or the law of some other state. If so, and if Bolton contends that

application of that state's law would prompt a different interpretation of the arbitration clause, Bolton may file a motion to reconsider along with a copy of the entire subcontract and the court will review the issue.

Bolton also raised the question of whether the claims must be resolved through arbitration, if the arbitration clause applies, or are more properly tried before this court. The Court of Appeals for the Fourth Circuit recently addressed this issue at length in In re White Mountain Mining Co., LLC, 403 F.3d 164 (4th Cir. 2005). The court acknowledged the "strong federal policy in favor of arbitration," especially in the context of arbitration agreements between domestic and foreign parties, but also addressed the necessary balancing of interests that must be undertaken when there is an "inherent conflict between arbitration and the statute's underlying purposes." 403 F.3d at 168. "In the bankruptcy setting," the court concluded, "congressional intent to permit a bankruptcy court to enjoin arbitration is sufficiently clear to override even international arbitration agreements." 403 F.3d at 168.

In this instance, there are no foreign parties, and the analysis in a domestic matter involves assessment of "whether the text of the bankruptcy laws," those being the provisions pertaining to core proceedings, reveal that "Congress intended to limit or prohibit the waiver of the bankruptcy forum for core proceedings." 403 F.3d at 169 (construing Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 227, 107 S. Ct. 2332 (1987)). A preliminary matter to that determination, of course, is a determination of whether the proceeding is a core proceeding.

Bolton's complaint sets out claims for collection of an account receivable and for breach of contract, which it characterizes as core proceedings under 28 U.S.C. § 157(b)(2). Courts have wrestled with the distinction between "core" and "non-core" proceedings for many years, and the distinction is "far from clear." In re Apex Express Corp., 190 F.3d 624, 631 (4th Cir. 1999). The "catchall" provisions

in §§ 157(b)(2)(A) and (O) in particular are subject to broad interpretations that could include many disputes as "core," and the "turn over" provision of § 157(b)(2)(E) has been interpreted to include accounts receivable claims to the extent that they are shown to be "property of the estate which is due, payable on demand, and for a sum certain." 190 F.3d at 631. The court in Apex Express specifically considered the question of whether accounts receivable could constitute "core proceedings" and concluded that they did not, in the context of pre-petition contract and breach of contract claims. 190 F.3d at 631-32. Those are exactly the sort of claims asserted by the debtor in its complaint, and in light of Apex Express, the court views the claims as non-core proceedings that are best resolved through arbitration, as provided in the contract between the debtor and the defendant's predecessor. Only the defendant can initiate arbitration, which per the subcontract must be in accordance with the Construction Industry Rules of the American Arbitration Association. If the defendant does not pursue arbitration within 30 days of the date of entry of this order, the adversary proceeding may proceed. If the defendant does initiate arbitration in a timely way, the adversary proceeding is stayed until the resolution of the arbitration. For the foregoing reasons, the motion to dismiss is **DENIED**, and the motion to stay and to compel arbitration is **ALLOWED**.

    **SO ORDERED.**

**END OF DOCUMENT**